JAMES HENDERSON v. NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, DIVISION OF SOCIAL SERVICES

No. 887SC213

(Filed 18 October 1988)

Social Security and Public Welfare § 1— Medicaid disability benefits—alcoholism—denied

The Department of Human Resources' decision to deny claimant Medicaid disability benefits was not supported by substantial competent evidence and was affected by errors of law and procedure where there was evidence supporting the agency decision that claimant's exertional impairments did not preclude him from performing light work but there were no findings or conclusions as to the effect of claimant's alcoholism or the total combination of

impairments on his residual functional capacity. Although the rule requiring consideration of nonexertional impairments in determining disability was set out *pro forma* in the Regulations section of the decision, the decision reflects little more than a mechanical straightforward application of the grids, or medical-vocational guidelines.

APPEAL by petitioner from *Frank R. Brown, Judge.* Judgment entered 9 September 1987 in Superior Court, NASH County. Heard in the Court of Appeals 31 August 1988.

*Eastern Carolina Legal Services, Inc., by Patricia A. Bailey, for petitioner-appellant.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Catherine C. McLamb, for the State.*

BECTON, Judge.

Appellant, James Henderson, appeals from a superior court judgment affirming the North Carolina Department of Human Resources' decision to deny him Medicaid disability benefits. We vacate the judgment and order the case remanded to the agency for further proceedings.

I

A.  Facts

In August 1985, James Henderson, then 35 years old, complaining of chest pains, shortness of breath and weakness, was taken to the emergency room and admitted to the hospital. He was 6'2" and weighed 122 pounds at admission. Henderson was hospitalized for 13 days and was diagnosed as suffering from hyperthyroidism, supraventricular tachycardia (abnormal heart rhythm), and antral gastritis (inflammation of the stomach lining). These conditions improved with treatment. While in the hospital, Henderson applied for Supplemental Security Income disability benefits (Medicaid). He claimed to be disabled as a result of chest pains, anxiety, and pain in his back, right leg and right hip.

Additional impairments documented in the Record on Appeal include anxiety reactions, peptic ulcer disease, hyperthrophic distal phalanges (bony growths) on both hands, essential hypertension, scoliosis (curvature of the spine), a probable herniated nucleus pulposus (ruptured disc), muscle spasms in the lower

back, arthritic disease of the right thigh, borderline mental re-tardation (I.Q. = 75), alcoholic gastritis, and chronic alcoholism. (Henderson denied a drinking problem.)

B.  Procedural History

The Nash County Department of Social Services (DSS) turned down Henderson's application for benefits, finding him "not a dis-abled person." Henderson appealed the DSS decision to the North Carolina Department of Human Resources (DHR), and a DHR hearing officer affirmed denial of benefits in a tentative decision. The tentative decision was affirmed on appeal to the DHR chief hearing officer and was incorporated by reference in the DHR Notice of Final Decision.

In the Final Decision, the chief hearing officer found as a fact that "[Henderson's] vocational profile corresponds to the factors cited in Vocational Rule 202.16 [relating to one's ability to work] as he is a younger individual, functionally illiterate, with a history of unskilled work and with the capacity for light work." Based on her further finding that "[t]his rule *directs* a finding of 'not dis-abled'" (emphasis added), the chief hearing officer concluded that Henderson was "not disabled as defined by the applicable regula-tions."

Henderson petitioned for judicial review in superior court. The superior court judge heard arguments and reviewed the rec-ord, but took no testimony or additional evidence. The judge af-firmed the DHR Final Decision, holding that "the Hearing Officer's decision comports with all applicable state and federal statutes [and] regulations[;] . . . is supported by substantial evidence of record; and has a rational basis in the evidence." Henderson appealed to this Court.

C.  Contentions on Appeal

Henderson contends that the superior court judge erred in affirming the DHR Final Decision because it was not supported by substantial evidence. Henderson claims that federal medical vocational guidelines were improperly relied upon to determine his disability status. He also contends that he is disabled under the regulations and that, as a result, there are no jobs in the na-tional economy that he can perform. Before we address these con-tentions, we summarize the law applicable to this case.

## II

A.   Standard of Review

The North Carolina Administrative Procedure Act (APA), codified at Chapter 150-B of the General Statutes, governs initial and appellate review of administrative agency decisions. The APA sets out the standard of review to be followed by the court charged with reviewing the agency decision (here, the superior court):

> . . . [T]he court reviewing a final decision may affirm the decision of the agency or remand the case for further proceedings. It may also reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> . . .
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law; [or]
>
> (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted . . . .

N.C. Gen. Stat. Sec. 150B-51(b) (1987).

The appropriate standard of review is known as the "whole record" test. *See Leiphart v. North Carolina School of the Arts,* 80 N.C. App. 339, 344, 342 S.E. 2d 914, 919 (1986), *cert. denied,* 318 N.C. 507, 349 S.E. 2d 862 (1986). Under the whole record test, the reviewing court must examine all competent evidence to determine if there is substantial evidence to support the administrative agency's findings and conclusions. *Community Savings & Loan Assoc. v. North Carolina Savings and Loan Commission,* 43 N.C. App. 493, 497, 259 S.E. 2d 373, 376 (1979). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lackey v. North Carolina Dep't of Human Resources,* 306 N.C. 231, 238, 293 S.E. 2d 171, 176 (1982). The reviewing court must not consider only that evidence which supports the agency's result; it must also take into account contradictory evidence or evidence from

which conflicting inferences could be drawn. *Thompson v. Wake County Board of Education,* 292 N.C. 406, 410, 233 S.E. 2d 538, 541 (1977). Ultimately, the reviewing court must determine whether the administrative decision had a rational basis in the evidence. *Overton v. Board of Education,* 304 N.C. 312, 322, 283 S.E. 2d 495, 501 (1981).

When an appellate court reviews the decision of a lower court, however (as opposed to when it reviews an administrative agency's decision on direct appeal), the scope of review to be applied by the appellate court under Section 150B-52 of the APA is the same as it is for other civil cases. *See* N.C. Gen. Stat. Sec. 150B-52 (1987); N.C. R. App. P. 10(a) (1988); *American National Insurance Co. v. Ingram,* 63 N.C. App. 38, 41, 303 S.E. 2d 649, 651 (1983), *cert. denied,* 309 N.C. 819, 310 S.E. 2d 348 (1983). Thus, our consideration of the superior court judgment is limited to determining whether the court committed any errors of law. *See Ingram,* 63 N.C. App. at 41, 303 S.E. 2d at 651. To accomplish our task though, we must consider the "whole record" so that we may determine whether the superior court judge was correct as a matter of law in holding that the DHR Final Decision was supported by substantial evidence and complied with applicable statutes and regulations. We begin our review by examining the law governing DHR Medicaid disability decisions.

B.  Medicaid Laws

Medicaid is a cooperative federal-state program through which medical assistance benefits are provided to needy disabled persons meeting certain criteria. *See* 42 U.S.C.A. Secs. 1381 *et seq.;* 42 U.S.C.A. Secs. 1396 *et seq.* (1983) (Supp. 1988); N.C. Gen. Stat. Secs. 108A-54 *et seq.* (Supp. 1988). North Carolina agencies making disability benefit determinations are required to comply with federal Medicaid statutes and regulations. N.C. Gen. Stat. Sec. 108A-56 (Supp. 1987); 42 U.S.C.A. Sec. 1396a (Supp. 1988); *see Lackey v. Dep't of Human Resources,* 306 N.C. 231, 235, 293 S.E. 2d 171, 174 (1982); *Lowe v. North Carolina Dep't of Human Resources,* 72 N.C. App. 44, 45, 323 S.E. 2d 454, 456 (1984). Although federal court decisions interpreting the applicable statutes and regulations are not binding on North Carolina courts, *see Lackey,* 306 N.C. at 236, 293 S.E. 2d at 175, in light of the paucity of North Carolina decisions on the relevant issues, we deem the well-

reasoned federal decisions discussed herein to be persuasive authority.

C.  Disability Determination

To qualify for disability benefits under federal law, a claimant must show that he is "disabled," in other words, that he is:

> . . . unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is *not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy,* regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C.A. Sec. 1382c(a)(3)(A), (B) (1983) (Supp. 1988) (emphasis added); *see also* 20 C.F.R. Sec. 416.905(a) (1986).

A five-step sequential evaluation process is employed to determine whether a claimant is disabled. *See* 20 C.F.R. Sec. 416.920 (1986); *Bowen v. Yuckert*, --- U.S. ---, 96 L.Ed. 2d 119, 126 (1987); *Hall v. Harris*, 658 F. 2d 260, 264-65 (4th Cir. 1981); *Lowe*, 72 N.C. App. at 46-47, 323 S.E. 2d at 456. In essence, the decisionmaker must determine: (1) whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. Sec. 416.920(b). If not, the next inquiry is, (2) whether the claimant has a "severe impairment" or combination of impairments. 20 C.F.R. Sec. 416.920(c). A severe impairment is one that significantly limits the claimant's physical or mental ability to do "basic work activities," defined in the regulations at 20 C.F.R. Sec. 416.921(b). If the claimant does not have a severe impairment or combination of impairments, he is not disabled, and the claim is denied. *Id.* If he does, the next inquiry is, (3) whether the impairment or its equivalent is listed in Appendix 1 of the regulations. 20 C.F.R. Sec. 416.920(d). Appendix 1 lists certain

medical impairments deemed so severe as to preclude substantial gainful activity. If the impairment or its equivalent is listed, the claimant is conclusively. presumed to be disabled. *Id.* If not, the next inquiry is, (4) whether the severe impairment prevents the claimant from performing work he performed in the past. 20 C.F.R. Sec. 416.920(e). If he still can do his former work, he is not disabled. *Id.* If he cannot, the last inquiry is, (5) whether the claimant is able to perform other work existing in the national economy in light of his "residual functional capacity" (or remaining capabilities given his physical, mental, and other limitations, *see* 20 C.F.R. Sec. 416.945), and his age, education, and past work experience. 20 C.F.R. Sec. 416.920(f). If the claimant is able to perform other work, he is "not disabled." *Id.* In appropriate circumstances, the medical-vocational guidelines found in Appendix 2 of the regulations direct the answer to this inquiry. *See* 20 C.F.R. Part 404, Subpart P, App. 2.

A claimant establishes a *prima facie* case of disability if he satisfies steps (3) or (4). The burden then shifts to the agency to show that the claimant can perform alternative work existing in the national economy under step (5). *See Lackey*, 306 N.C. at 243, 293 S.E. 2d at 179; *Hall*, 658 F. 2d at 264. In the case before us, the chief hearing officer found, under step (1), that Henderson was not engaged in substantial gainful activity; under step (2), that Henderson did have severe impairments of "back and leg pain" and "borderline intelligence"; under step (3), that these severe impairments did not meet the listings in Appendix 1; and under step (4), that Henderson could not return to past work "because the physical exertion required exceeds his capacity."

The parties concede that Henderson met his burden of proof in establishing disability. The question for our consideration is whether DHR met the requirements of step (5), that is, whether it showed that, despite his impairments, Henderson could nonetheless perform work existing in the national economy.

### III

Henderson first asserts that the agency improperly used the Appendix 2 medical-vocational guidelines to determine that he was not disabled. For the reasons set out below, we agree.

A.  Medical-Vocational Guidelines ("Grids")

The medical-vocational guidelines, commonly referred to as "grids," distill and consolidate long-standing medical evaluation policies employed in disability determinations. *See Heckler v. Campbell*, 461 U.S. 458, 461, 76 L.Ed. 2d 66, 71 (1983). They are designed to reduce or eliminate the need for vocational expert testimony, thereby enhancing uniformity, accelerating the benefit-determination process, and making efficient use of scarce state resources. *See id.*

The grids act as a form of administrative notice that a significant number of unskilled jobs exist in the national economy for persons having a particular combination of attributes. *See* 20 C.F.R. Part 404, Subpart P, App. 2, Sec. 200.00(b) (1986). They identify job requirements, interrelate a claimant's physical ability with his age, education and previous work experience, and direct a conclusion whether work exists that the claimant could perform. If such work exists, the claimant is determined to be "not disabled." 20 C.F.R. Secs. 416.960-969 (1986). There are three tables of grids, classified by level of work activity (sedentary, light, and medium). The claimant's residual functional capacity for physical exertion alone determines which set of grids applies.

Because the grids are predicated on physical strength limitations ("exertional impairments"), *conclusive* reliance on grids is inappropriate when a claimant's residual functional capacity is diminished by a "nonexertional impairment." 20 C.F.R. Part 404, Subpart P, App. 2, Sec. 200.00(e) (1986); *Harvey v. Heckler*, 814 F. 2d 162, 164 (4th Cir. 1987); *Hall*, 658 F. 2d at 265; *see generally, Heckler v. Campbell*, 461 U.S. at 462, 76 L.Ed. 2d at 71. The rationale is that a narrower range of appropriate jobs is available to a claimant with nonexertional impairments than the grids would indicate. *Smith v. Schweiker*, 719 F. 2d 723, 725 (4th Cir. 1984).

The regulations provide that full individualized consideration of all relevant facts must be given when a claimant's impairments are solely nonexertional, or are a combination of exertional and nonexertional. 20 C.F.R. Part 404, Subpart P, App. 2, Sec. 200.00(e) (1986); *see Grant v. Schweiker*, 699 F. 2d 189, 192 (4th Cir. 1983). Thus, to the extent that the combination of exertional and nonexertional impairments further limits the range of jobs available to a claimant, DHR may not conclusively rely on the

grids to determine the existence of alternative work. Instead, the agency must produce vocational expert testimony to show that the claimant retains the capacity to perform specific jobs existing in significant numbers in the national economy. *See Grant*, 699 F. 2d at 192; *McCrea v. Heckler*, 580 F. Supp. 1106, 1110 (W.D.N.C. 1984).

Whether a claimant's nonexertional limitation affects his capacity to perform certain job activities is a question of fact. *Smith*, 719 F. 2d at 725. When evidence of nonexertional impairments is presented, the agency must make specific findings as to the existence of those impairments, and must explicitly evaluate their effect on the claimant's ability to perform jobs he is otherwise exertionally capable of performing. *See id.* Only if the nonexertional impairment is found not to affect the claimant's ability to work is conclusive use of the grids proper. *See id.*

B.  Exertional Impairments

The administrative record reveals that Henderson suffered exertional limitations associated with his back, hip, and leg. The chief hearing officer concluded that despite these exertional limitations, Henderson could still perform "light work" as defined in the regulations. Although our review discloses sharply conflicting evidence as to Henderson's ability to perform light work, we are mindful that the whole record test is not a tool of judicial intrusion, and that we are not permitted to replace the agency's judgment with our own even though we might rationally justify reaching a different conclusion. *See Thompson*, 292 N.C. at 410, 233 S.E. 2d at 541. We hold that there is a rational basis in the evidence for concluding that Henderson's exertional impairments do not preclude him from performing light work, and therefore that this part of the agency's decision was supported by substantial evidence.

C.  Nonexertional Impairments

Our review of the record reveals substantial evidence that Henderson also had, among others, the following significant nonexertional impairments: recurrent pain; borderline mental retardation; and chronic alcoholism and related conditions. Henderson contends on appeal that the agency improperly relied on the grids because it failed first to fully consider and make findings of fact

regarding his nonexertional impairments of borderline intelligence and alcoholism. We summarily conclude that the findings regarding Henderson's borderline intelligence were sufficient. However, we agree that DHR's failure sufficiently to consider Henderson's nonexertional impairment of alcoholism precluded application of the grids.

Alcoholism is recognized as a nonexertional impairment that may be so disabling as to preclude substantial gainful employment. *See Williams v. Bowen*, 844 F. 2d 748, 757-58 (10th Cir. 1988); *Ray v. Bowen*, 843 F. 2d 998, 1005 (7th Cir. 1988); *Hicks v. Califano*, 600 F. 2d 1048, 1051 (4th Cir. 1979). When evidence of alcoholism is presented, the agency must make an individualized determination; straightforward application of the grids is not appropriate. *See Williams*, 844 F. 2d at 760; *Kellar v. Bowen*, 848 F. 2d 121, 124-25 (9th Cir. 1988); *Murphy v. Heckler*, 613 F. Supp. 1233, 1234 (W.D. Pa. 1985); *McCrea v. Heckler*, 580 F. Supp. 1106, 1110 (W.D.N.C. 1984). Findings must be made as to whether the claimant is addicted to alcohol, has lost the ability to control its use, and is prevented by alcohol use from obtaining and maintaining employment. *See Ferguson v. Heckler*, 750 F. 2d 503, 505 (5th Cir. 1985); *Kellar*, 848 F. 2d at 124; *Hicks*, 600 F. 2d at 1051. Failure to make these inquiries warrants remand to the agency. *See Hicks*, 600 F. 2d at 1051; *accord Kellar*, 848 F. 2d at 123.

The only reference to Henderson's alcoholism by the chief hearing officer is found in a section of the Final Decision entitled "Evaluation of the Evidence." In that section, she summarized the report of one of Henderson's physicians, stating: "A history of alcohol use was given with related delirium tremors and withdrawal seizures. [Henderson] claimed abstinence for 5 months, and there were no signs of inebriation on exam." However, the chief hearing officer failed to discuss—and apparently failed to consider—the following statements made by the physician in the same report:

> Of specific note, despite the claimant's indication that he has not been drinking for 5 months, Dr. Johnson . . . noted on his medical evaluation [one month ago] that the claimant was inebriated and unkempt at that time. Diagnosis at that time was for alcoholism with alcoholic gastritis . . . .

. . . Claimant does note that he has legal difficulties in terms of being placed in jail on multiple occasions for "public drunkenness."

. . . Mr. Henderson . . . appears to [have] a long history of alcohol abuse and dependency . . . . [T]here is indeed some question as to the claimant's [reliability] as to the accuracy of his drinking behavior.

. . . [T]he most likely diagnosis at this time is for alcohol abuse and dependence, episodic.

. . . Thus, from a psychiatric point of view, any level of disability would be related directly to the effects of alcohol on his system, as well as his other medical difficulties with arthritis, hyperthyroidism, essential hypertension and the sequelae of alcoholism, such as the current gastritis and peptic ulcer disease.

Henderson's chronic alcoholism is documented in other medical reports in the record as well. An agency decision must be based on a consideration of *all* relevant evidence in the record; the agency may not select only that evidence favoring its ultimate conclusion. *See Ray*, 843 F. 2d at 1002; *accord Thompson*, 292 N.C. at 410, 233 S.E. 2d at 541. Furthermore, although it is true that Henderson denied drinking, a claimant's denial of alcohol use is not alone determinative of whether his ability to work is diminished by alcoholism. *See Kellar*, 848 F. 2d at 124 (noting propensity of alcoholics to deny drinking) (citations omitted).

The hearing officer at the first state-level hearing did make the following finding, later incorporated in the Final Decision, regarding Henderson's alcoholism:

3. The objective medical evidence reveals:

. . .

e. That claimant had a history of alcohol abuse. His weight is stable and laboratory studies have revealed no significant abnormalities to indicate malnutrition or liver dysfunction. He had been diagnosed with anxiety reaction.

Considering the applicable regulations, we conclude that this finding relates only to step (3) of the evaluation process, address-

ing only whether Henderson's alcoholism met the listings in Appendix 1 which conclusively establishes disability. This is evident in light of the hearing officer's conclusion "[t]hat the impairments described in the above findings of fact do not meet or equal the level of severity described in . . . [section] 12.09" of Appendix 1. Section 12.09 addresses substance addiction disorders, including alcoholism, and provides that "[t]he level of severity for these disorders is met when" a severe secondary condition independently listed in Appendix 1 exists, specifically, anxiety disorder, liver damage, or gastritis leading to malnutrition. 20 C.F.R. Part 404, Subpart P, App. 1, Sec. 12.09 (1986). We hold that this finding is insufficient to demonstrate a proper evaluation, required under step (5), of the effect of Henderson's alcoholism on his residual functional capacity.

In our view the grids were conclusively relied upon to find Henderson not disabled. No findings or conclusions were made as to the effect of Henderson's alcoholism — or the total combination of impairments — on his residual functional capacity. Although the rule requiring consideration of nonexertional impairments in determining disability was set out *pro forma* in the "Regulations" section of the decision, the decision reflects little more than a mechanical, straightforward application of the grids. We conclude that DHR did not satisfy the requirements of step (5) because it failed to fully consider Henderson's documented nonexertional impairment of chronic alcoholism and to determine whether that alcoholism diminished his residual functional capacity to perform a full range of light work. DHR erred by conclusively applying the grids without first making the necessary specific findings. DHR's decision, therefore, was not supported by substantial competent evidence and was affected by errors of law and improper procedure.

On remand we direct DHR to consider the combination of Henderson's impairments, both exertional and nonexertional, and to make specific findings as to whether all of Henderson's impairments combined affect his ability to work and diminish the universe of jobs available to him. Additionally, we instruct DHR that if the combination of exertional and nonexertional impairments makes application of the grids inappropriate to Henderson, DHR must produce vocational expert testimony regarding "substantial gainful work" — i.e., specific jobs — existing in the national econ-

omy available to Mr. Henderson given his residual functional capacity.

## IV

Henderson next contends that he does not have the residual functional capacity to perform any jobs in the national economy, and therefore that the DHR conclusion that alternative work exists for him was not supported by substantial evidence. In light of our instructions to DHR, we decline to decide whether Henderson has the residual capacity to perform any jobs existing in the national economy. That is a decision for the agency to make on remand.

## V

We hold that the decision of the Department of Human Resources was affected by error of law and made upon unlawful procedure. We further hold that the decision, that Henderson was not disabled as directed by the grids, was not supported by substantial, competent evidence. We vacate the judgment of the superior court and direct the court to remand the case to the Department of Human Resources for additional proceedings consistent with this opinion.

Vacated and remanded.

Judges WELLS and PHILLIPS concur.