CROWELL CONSTRUCTORS, INC. v. STATE ᴇx ʀᴇʟ. COBEY

[99 N.C. App. 431 (1990)]

Judges Oʀʀ and Lᴇᴡɪs concur.

———————

CROWELL CONSTRUCTORS, INC. v. STATE OF NORTH CAROLINA ᴇx ʀᴇʟ. WILLIAM W. COBEY, JR., Sᴇᴄʀᴇᴛᴀʀʏ, Dᴇᴘᴀʀᴛᴍᴇɴᴛ ᴏf Eɴᴠɪʀᴏɴᴍᴇɴᴛ, Hᴇᴀʟᴛʜ ᴀɴᴅ Nᴀᴛᴜʀᴀʟ Rᴇsᴏᴜʀᴄᴇs

No. 8912SC1057

(Filed 17 July 1990)

1. **Administrative Law and Procedure § 67 (NCI4th) — Superior Court reversal of Mining Commission decision — appellate review — whole record test**

Although appellate review of a Superior Court judgment is normally limited to whether the court committed any errors of law, the errors of law alleged here turn on the question of whether the trial court properly applied the judicial review standards of N.C.G.S. § 150B-51, so that the whole record must be considered in deciding whether the Superior Court judge was correct as a matter of law in holding that the Mining Commission's Final Decision was not supported by substantial evidence and was arbitrary and capricious.

**Am Jur 2d, Administrative Law §§ 554, 555, 621, 650.**

CROWELL CONSTRUCTORS, INC. v. STATE EX REL. COBEY

[99 N.C. App. 431 (1990)]

2. **Mines and Minerals § 1 (NCI3d)— removal of old stockpiles of sand—mining**

The Mining Commission's judgment that the removal of old stockpiles of sand was mining within the definition of N.C.G.S. § 74-49(7)b was supported by competent and substantial evidence and was not arbitrary or capricious where Cumberland Sand and Gravel had operated a sand and gravel pit between 1952 and 1960, leaving as by-product on the site stockpiles of coarse sand deposited above the original service soil; plaintiff purchased the tract of land in 1978 or 1979; plaintiff subsequently began removing the stockpiled sand and NRCD informed plaintiff that it was illegally mining and needed a permit to continue; and by 1986 the stockpiled sand was covered with varying densities of vegetation, including pine trees, and a brown band of material became obvious at the top of the stockpiles after the vegetation was cleared and the stockpiles were cut by a front end loader; and the brown band was the accumulation of second growth on the tract of leaves and pine straw that covered the stockpiles. Considering the type of material involved here, the amount of time that lapsed and the amount of revegetation that occurred at the site, the Mining Commission's determination that the stockpiled sand had become surface soil was neither arbitrary nor capricious.

**Am Jur 2d, Mines and Minerals §§ 5, 7, 8, 175.**

3. **Mines and Minerals § 2 (NCI3d)— mining without permit**

The Mining Commission had the authority to impose a civil penalty where, despite confusion over the dates on which plaintiff violated the statute, there was sufficient evidence in the record that plaintiff mined without a permit on three dates after receiving a 1984 notice, and on two dates after receiving a 1986 notice. N.C.G.S. § 74-64(a)(1)a.

**Am Jur 2d, Mines and Minerals §§ 5, 7, 8, 175.**

4. **Mines and Minerals § 2 (NCI3d)— mining without permit— penalty—not arbitrary and capricious**

A penalty for mining without a permit was not arbitrary and capricious even though the company had a good record of complying with the Mining Act where the evidence also

CROWELL CONSTRUCTORS, INC. v. STATE EX REL. COBEY

[99 N.C. App. 431 (1990)]

tended to show that about ten acres of land was involved, off-site sedimentation occurred as a result of the violations, plaintiff's restoration efforts were initially ineffective, plaintiff was found to be mining on two separate occasions after a notice was received, and plaintiff continued to mine for more than a month after receipt of the notice.

**Am Jur 2d, Mines and Minerals § 176.**

Judge LEWIS dissenting.

APPEAL by respondent from judgment entered by *Judge George R. Greene* in CUMBERLAND County Superior Court. Heard in the Court of Appeals on 10 April 1990.

In November 1987, Administrative Law Judge Thomas R. West heard this matter to determine whether the Department of Natural Resources and Community Development ("NRCD" (NRCD is the predecessor agency of the Department of Environment, Health and Natural Resources) ) had the authority to issue a civil penalty against petitioner for violations of the N.C. Mining Act, N.C. Gen. Stat. §§ 74-46 to -88 (1985 & Supp. 1989), and whether the assessment of a $10,000 civil penalty by the agency was appropriate.

In March 1988, the A.L.J. concluded that mining, within the meaning of the Mining Act, had occurred and recommended that a penalty of only $2,000 be assessed against petitioner for violations that occurred on 19 February and 14 March 1986. Subsequently, the matter was heard before the N.C. Mining Commission for Final Agency Decision pursuant to N.C. Gen. Stat. § 150B-42 (1987). The Mining Commission modified the A.L.J.'s findings and conclusions and found that petitioner's activities constituted mining under all three definitions of the Act. The Commission also reinstated the $10,000 penalty.

Petitioner appealed the Final Agency Decision to Superior Court pursuant to N.C. Gen. Stat. § 150B-43 (1987). In August 1989, Judge Greene reversed the Mining Commission on the ground that no competent, material or substantial evidence supported a finding that mining had occurred. The Court found it unnecessary to consider the issue of the penalty. From that judgment, respondent appealed.

CROWELL CONSTRUCTORS, INC. v. STATE EX REL. COBEY

[99 N.C. App. 431 (1990)]

*McCoy, Weaver, Wiggins, Cleveland & Raper, by Richard M. Wiggins and Kimbrell Kelly Tucker, for petitioner appellee.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General J. Mark Payne, for respondent appellant.*

ARNOLD, Judge.

Evidence in the record indicates the following facts: Crowell Constructors, Inc. ("Crowell") is a North Carolina corporation doing business in the state. Sometime in 1978 or 1979 Crowell purchased a thirty-six acre tract of land located in Moore County. Between 1952 and 1960, Cumberland Sand and Gravel Corporation operated a sand and gravel pit on the property. Cumberland Sand and Gravel ceased operations in 1960, leaving as by-product on the site stockpiles of coarse sand. All of the stockpiled sand was deposited above the original surface soil.

Subsequent to its purchase of the property, Crowell began removing the stockpiled sand. After inspecting the property in 1984, NRCD sent Crowell a Notice of Violation informing the company it was illegally mining and needed a permit to continue. *See* N.C. Gen. Stat. § 74-64(a)(1)a (1985). Crowell contended the operation did not constitute mining. NRCD reviewed the situation and determined that Crowell's activities technically fit the statutory definition of mining, but the short-term nature of the project lent itself more to regulation under the Sedimentation Pollution Control Act. N.C. Gen. Stat. §§ 113A-50 to -66 (1989). NRCD understood that the removal of the sand would be completed within a few months.

Pursuant to these discussions, Crowell submitted a soil erosion and sedimentation control plan to NRCD, which was approved by NRCD in June 1984. However, Crowell continued removing sand from the tract during the wet-weather or winter months of 1985 and 1986. On 14 February 1986, NRCD sent petitioner another Notice of Violation informing petitioner it was violating the Mining Act by mining without a permit. The Notice stated that the company was subject to a civil penalty of up to $5,000 for each day of illegal operation. Crowell apparently misunderstood the 1984 discussions with NRCD, which had waived the mining permit only for a short-term operation. Nevertheless, removal of the stockpiled sand continued until 21 March 1986, more than a month after the February notification was received. On 27 March 1987, NRCD as-

sessed Crowell a fine of $10,000 for mining without a permit on 23 January and on 19 February 1986.

Judicial review of administrative agency decisions is governed by the North Carolina Administrative Procedure Act, codified at Chapter 150B of the General Statutes. A court reviewing an agency decision may reverse if it finds the decision: "[u]nsupported by substantial evidence . . . in view of the entire record as submitted; or . . . [a]rbitrary or capricious." N.C. Gen. Stat. § 150B-51(b)(5), (6) (1987). This standard of review is known as the "whole record" test. *Henderson v. N.C. Dept. of Human Resources*, 91 N.C. App. 527, 530, 372 S.E.2d 887, 889 (1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Thompson v. Board of Education*, 292 N.C. 406, 414, 233 S.E.2d 538, 544 (1977). To determine whether substantial evidence exists, the reviewing court must consider not only the evidence supporting the agency result, but also contradictory evidence or evidence from which conflicting inferences may be drawn. *Id.* at 410, 233 S.E.2d at 541. The whole record test "properly takes into account the specialized expertise of the staff of an administrative agency. . . ." *High Rock Lake Assoc. v. Environmental Management Comm.*, 51 N.C. App. 275, 279, 276 S.E.2d 472, 475 (1981). Finally, a reviewing court should not substitute its judgment for that of the agency. *Id.*

This Court has also applied the phrase "arbitrary and capricious" to the review of agency decisions.

> The "arbitrary and capricious" standard is a difficult one to meet. Administrative agency decisions may be reversed as arbitrary or capricious if they are "patently in bad faith," (citation omitted) or "whimsical" in the sense that "they indicate a lack of care and careful consideration" or "fail to indicate 'any course of reasoning and the exercise of judgment' . . . ." (Citations omitted.)

*Lewis v. N.C. Dept. of Human Resources*, 92 N.C. App. 737, 740, 375 S.E.2d 712, 714 (1989). "[T]he reviewing court does not have authority to override decisions within agency discretion when that discretion is exercised in good faith and in accordance with law." *Id.*

[1] When an appellate court, however, reviews the decision of a lower court as opposed to when it reviews an administrative agency's decision on a direct appeal, the scope of review to be

applied is the same as it is for other civil cases. *American National Insurance Co. v. Ingram*, 63 N.C. App. 38, 303 S.E.2d 649, *cert. denied*, 309 N.C. 819, 310 S.E.2d 348 (1983). This rule normally limits our review of a superior court judgment to whether the court committed any errors of law. N.C. Gen. Stat. § 7A-27(b) (1989). Nevertheless, the errors of law alleged herein turn on the question of whether the trial court properly applied the judicial review standards of N.C. Gen. Stat. § 150B-51. Therefore, we must consider the whole record to determine whether the Superior Court judge was correct as a matter of law in holding that the Mining Commission's Final Decision was not supported by substantial evidence and was arbitrary and capricious.

[2] Respondent first assigns as error the Superior Court ruling that petitioner's activities did not constitute mining. After careful scrutiny of the record, and for the reasons we set out, we agree with respondent.

The Mining Act contains three definitions of "mining." Under the first, mining is "[t]he breaking of the surface soil in order to facilitate or accomplish the extraction or removal of minerals, ores, or other solid matter . . . . " G.S. § 74-49(7)a. Sand is defined as a mineral. G.S. § 74-49(6). To find that mining has occurred under this subsection, it must be shown that Crowell broke the "surface soil."

A review of the evidence reveals that in 1960 the stockpiles of sand were as high as twenty-five feet, that some were conical in shape and others were in ridges. By 1986, conditions at the site had changed. The A.L.J. found:

44. The stockpiled sand is covered with varying densities of vegetation, including pine trees.

45. After the vegetation was cleared and the stockpiles cut by Crowell's front end loader, a brown band of material became obvious at the top of the stockpiles. This band is well illustrated in Respondent's [photographs of the site]. The brown band is the accumulation of the second growth on the tract of leaves and pine straw that covered the stockpiles.

Where the line is drawn to determine when a sandpile is still just a pile of sand and when it becomes the surface of the earth will turn on the particular facts of each case. Considering the type of material involved here, the amount of time that elapsed and

the amount of revegetation that occurred at the Crowell site, the Mining Commission's determination that the stockpiled sand had become the surface soil was neither arbitrary nor capricious. It is not unreasonable to define the surface as the layer of soil on which plants and trees are growing.

Our research uncovers only one other case that has ruled on the issue. Fifty years ago a federal court held that "mining" had not occurred where a company began to remill and retreat piles of crushed rock eight years after the gravel had been stockpiled. *Atlas Milling Co. v. Jones*, 115 F.2d 61 (1940). *Atlas*, however, is easily distinguishable because several factors previously mentioned are different in the two cases: the materials involved, the time that elapsed and the amount of revegetation that occurred. We therefore hold in the case *sub judice* that mining occurred under G.S. § 74-49(7)a.

Respondent also contends that the court erred in reversing the Mining Commission's finding that Crowell had engaged in mining under G.S. § 74-49(7)b. This subsection defines mining as "[a]ny activity or process constituting all or part of a process for the extraction or removal of minerals . . . from its original location. . . ." Petitioner contends that the sand extracted from the stockpiled areas was not in its original location and therefore its activities cannot constitute mining.

Our discussion above tends to invalidate this argument. Evidence that reasonably supports the finding that the stockpiled sand can be defined as the surface soil, also may support the determination that the sand was in its original location. Furthermore, this subsection applies to "all or part" of a mining process. Regardless of whether one determines the stockpiled sand was in its original location, petitioner's activities were part of a mining process. The A.L.J. found that the stockpiled sand originally was the by-product of a mining operation. About twenty years later Crowell began extracting the sand for use in making asphalt. Crowell's activities then reasonably can be defined as part of a mining process.

Mining is also defined in the Act as "[t]he preparation, washing, cleaning or other treatment of minerals, ores, or other solid matter so as to make them suitable for commercial, industrial, or construction use." G.S. § 74-49(7)c. As noted above, Crowell excavated sand from the site and used it to make asphalt. Such activity reasonably can be defined as preparing a mineral for commercial use.

CROWELL CONSTRUCTORS, INC. v. STATE ex rel. COBEY

[99 N.C. App. 431 (1990)]

In sum, the record demonstrates substantial evidence to support the finding that Crowell's activities constituted mining within the meaning of the statute. Neither this Court, nor the trial court, should substitute its judgment for that of the Commission in the face of reasonable supporting evidence. *High Rock Lake Assoc.*, 51 N.C. App. 275, 276 S.E.2d 472. In view of the entire record, the Commission's judgment was supported by competent and substantial evidence, and was neither arbitrary nor capricious.

[3] Crowell also makes two cross-assignments of error related to the penalty imposed by the Mining Commission. Petitioner argues the Mining Commission did not have the authority to impose a civil penalty against the company before notice had been sent pursuant to G.S. § 74-64(a)(1)a. The statute provides that the NRCD may assess a penalty of up to $5,000 a day against a person who fails to secure a permit before mining, and then it states, "[n]o civil penalty shall be assessed until the operator has been given [written] notice of the violation . . . . " *Id.*

First, we note that part of the dispute concerning this penalty results from confusion over the dates on which Crowell violated the statute. According to the findings of fact made by the A.L.J., Crowell received one Notice of Violation on 15 February 1986. NRCD employees observed mining operations occurring on the property on 19 February and 14 March 1986. The A.L.J. also found that NRCD had assessed Crowell $10,000 for mining without a permit on 23 January 1986 and 19 February 1986. Crowell was penalized $5,000 per day for the two violations. The company argues that a penalty for the 23 January violation, which occurred before the date of notification, was improper. However, the Mining Commission also found as a fact that Crowell received a Notice of Violation on or about 8 February 1984, well before the three 1986 violations. Furthermore, even if some confusion surrounded the 1984 notification, the A.L.J. found that Crowell mined without a permit on 19 February and 14 March 1986, two dates after the 15 February 1986 Notice of Violation was received. To summarize, there was sufficient evidence in the record showing that Crowell mined without a permit on three dates after receiving the 1984 notice, and on two dates after receiving the 1986 notice. Therefore, this assignment of error is overruled.

[4] Finally, respondent contends that the penalty assessed by the director of the NRCD is arbitrary and capricious when examined

**CROWELL CONSTRUCTORS, INC. v. STATE EX REL. COBEY**

[99 N.C. App. 431 (1990)]

against the criteria for determining the amount of the penalty as set forth in 15 N.C. Admin. Code tit. 15, 5F.0007 (December 1989). Crowell argues that the evidence showed the company has a good record of complying with the Mining Act. However, the evidence also tended to show that about ten acres of land was involved in this violation, off-site sedimentation occurred as a result of the violations, and that Crowell's restoration efforts, at least initially, were ineffective. Further, Crowell was found to be mining on two separate occasions after the February 1986 notice was received, and continued to mine for more than a month after receipt of the notice. In light of this evidence, the assessment is justified and should not be disturbed.

The order of the trial court is

Reversed.

Judge DUNCAN concurs.

Judge LEWIS dissents.

Judge LEWIS dissenting.

I respectfully dissent.

I agree with the majority that the standard of review is a whole record test. I believe the trial court judge made a proper consideration of relevant factors when he determined that the Mining Commission's final decision was not supported by substantial evidence and was arbitrary and capricious.

The issue is whether or not the removal of the stockpile of sand constituted breaking the surface and therefore was "mining" under the statute. The evidence showed that the densities of vegetation were some scrub pines on the extreme southern and western sides of the sand piles. I do not believe this constitutes a new "surface soil" as contemplated by the statute. It is impossible to tell from the photographs in the record whether the trees were existing prior to 1960 or after. The definition given in the record of scrub pines as being some ten feet tall would seem to exclude those trees existing which appear to be very much taller. Few, undefined number of scrub pines does not, to me, make a new

surface. The stockpile of sand was most assuredly not in its original location.

I believe that until the legislature makes a different determination, once a mineral has been removed from its original sub-surface location and stockpiled, it can never become a new surface nor be subject to mining regulations under the existing statutes. "Surface" to one can certainly mean one thing and something quite different to another. As former Chief Justice Branch is credited with saying, "to clean out a chicken house means one thing to a farmer but something quite different to a chicken thief." "Surface" may well be determined on a case by case basis according to the length of time the sand, gravel and other minerals are stockpiled. However, I believe under our current statutes and these circumstances, once extracted, the thing ceases to be subject to mining. For these reasons, I would affirm the trial court and thus respectfully dissent.