CORRELL v. DIVISION OF SOCIAL SERVICES

[103 N.C. App. 562 (1991)]

———————

RUSSELL S. CORRELL AND KELLY L. CORRELL, PETITIONERS-APPELLEES v. DIVISION OF SOCIAL SERVICES AND DIVISION OF MEDICAL ASSISTANCE, NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, RESPONDENTS-APPELLANTS

No. 9027SC218

(Filed 6 August 1991)

**Social Security and Public Welfare § 1 (NCI3d) — Medicaid — excess reserve — ownership of principal residence — exclusion of contiguous property**

An applicant for Medicaid benefits for medically needy persons must own his primary residence in order for property contiguous to the primary residence to be excluded under N.C.G.S. § 108A-55 from consideration as an available resource in determining the applicant's financial eligibility for such benefits. Therefore, Medicaid benefits were properly denied on the ground that property owned by the applicants which was contiguous to their rented primary residence constituted excess reserve.

**Am Jur 2d, Welfare Laws § 40.**

APPEAL by respondents from judgment entered 19 December 1989 by *Judge Marvin K. Gray* in GASTON County Superior Court. Heard in the Court of Appeals 20 September 1990.

CORRELL v. DIVISION OF SOCIAL SERVICES

[103 N.C. App. 562 (1991)]

*Turner, Enochs, Sparrow, Boone & Falk, P.A., by Laurie S. Truesdell and Thomas E. Cone, for petitioner-appellees.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Jane T. Friedensen, for respondent-appellants.*

PARKER, Judge.

The question presented by this appeal is whether an applicant for Aid to Families with Dependent Children-Medical Assistance ("Medicaid") who does not own the real property on which he resides, but does own other real property contiguous to his residence, may be denied Medicaid benefits based on ownership of such other property.

The underlying facts are not in dispute. Petitioners rent their primary place of residence and they own in fee simple a lot with a tax value of $3,640.00 located directly across the road from their residence. Petitioner Russell Correll's father lives in a trailer on the property owned by petitioners. The sole basis on which petitioners were denied Medicaid benefits was their ownership of this property.

On 22 November 1988 petitioners applied for Medicaid. On 6 January 1989 the Gaston County Department of Social Services ("DSS") denied the application on grounds that petitioners' real property constituted excess reserve. A local appeal hearing was held on 26 January 1989; the result was a decision upholding the DSS decision. Petitioners requested a State appeal hearing and on 9 May 1989 a hearing officer of respondent Division of Social Services upheld the denial of petitioners' Medicaid application. On 21 June 1989, after reviewing the record and written arguments, the chief hearing officer of respondent Division of Social Services issued a final agency decision upholding the decision to deny petitioners' application.

On 19 July 1989 petitioners filed a petition for judicial review pursuant to N.C.G.S. § 108A-79(k). The superior court's final order reversed and remanded respondent's final agency decision on grounds that it was affected by error of law and unsupported by substantial evidence of record. Respondents appealed to this Court.

Respondents contend the court below erred by reversing and remanding their final agency decision, since the decision was sup-

ported by substantial competent evidence in the record as a whole and by applicable statutes, regulations and policies. We agree.

The North Carolina Administrative Procedure Act governs the standard of initial and appellate review of administrative agency decisions. *Henderson v. N.C. Dept. of Human Resources*, 91 N.C. App. 527, 530, 372 S.E.2d 887, 889 (1988). The Act provides that a superior court may affirm, reverse, or modify a final agency decision or remand the case to the agency for further proceedings. N.C.G.S. § 150B-51(b) (1987). A superior court may reverse or modify a final agency decision which is (i) in violation of constitutional provisions, (ii) in excess of the statutory authority or jurisdiction of the agency, (iii) made upon unlawful procedure, or (iv) affected by other error of law. *Id.; Henderson v. N.C. Dept. of Human Resources*, 91 N.C. App. at 530, 372 S.E.2d at 889. The standard of judicial review is the whole record test, under which the reviewing court must examine all competent evidence to support the agency's findings and conclusions. *Henderson v. N.C. Dept. of Human Resources*, 91 N.C. App. at 530, 372 S.E.2d at 889. This test does not permit the reviewing court to substitute its own judgment for the agency's as between two reasonable conflicting views. Instead, the reviewing court must "take into account both the evidence justifying the agency's decision and the contradictory evidence from which a different result could be reached." *Lackey v. Dept. of Human Resources*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982).

When an appellate court reviews the decision of a lower court, however (as opposed to when it reviews an agency's decision on direct appeal), the scope of review is the same as for other civil cases. *Henderson v. N.C. Dept. of Human Resources*, 91 N.C. App. at 531, 372 S.E.2d at 890. Thus our consideration of the superior court judgment in this case is limited to determining whether the court committed any errors of law. *Id.* Considering the whole record, we must determine whether the superior court judge was correct as a matter of law in concluding that (i) pursuant to N.C.G.S. § 108A-55 petitioners' real property had to be excluded from consideration as a resource without regard to whether petitioners had an ownership interest in their primary place of residence, (ii) it was error for respondents not to exclude petitioners' property from consideration as a resource, and (iii) respondents' decision was unsupported by substantial evidence in view of the entire record as submitted.

The North Carolina statute at issue reads in pertinent part:

The Department may authorize [payments of the cost of medical care] when the total resources of such person are not sufficient to provide the necessary care. When determining whether a person has sufficient resources to provide necessary medical care, there shall be excluded from consideration the person's primary place of residence and the land on which it is situated, and in addition there shall be excluded real property contiguous with the person's primary place of residence in which the property tax value is less than [$12,000.00] . . . .

N.C.G.S. § 108A-55 (1988).

Medicaid is a cooperative federal-state program providing medical assistance to certain classes of needy persons. *See* 42 U.S.C. §§ 1396 *et seq.*; N.C.G.S. §§ 108A-54 through -65. North Carolina adopted the Medicaid program through the enactment of General Statutes Chapter 108, now recodified as Chapter 108A. Once a state elects to participate in the Medicaid program, it must comply with federal rules and regulations. *Lackey v. Dept. of Human Resources*, 306 N.C. at 235, 293 S.E.2d at 175.

States participating in the Medicaid program are required to provide coverage to "categorically" needy persons. In North Carolina, categorically needy persons include recipients of Aid to Families with Dependent Children ("AFDC") and certain aged, blind, or disabled individuals. *Morris by Simpson v. Morrow*, 783 F.2d 454, 456 (4th Cir. 1986). Participating states may also provide coverage for "medically" needy persons. Medically needy persons are those who meet the nonfinancial eligibility requirements for cash assistance programs, such as AFDC and federal Supplemental Security Income (SSI), but whose income and resources are too high for them to qualify for categorical aid and who nonetheless lack the means to pay their medical expenses. North Carolina provides medically needy coverage to those who meet income and resources limitations established by respondents pursuant to authority delegated by the General Assembly. *See* N.C.G.S. §§ 108A-54 and -55; *Morris by Simpson v. Morrow*, 783 F.2d at 456; 10 N.C. Admin. Code tit. 10, ch. 50.

Relevant federal law provides as follows: "A State plan for medical assistance must . . . provide for taking into account only such income and resources as are . . . available to the applicant

CORRELL v. DIVISION OF SOCIAL SERVICES

[103 N.C. App. 562 (1991)]

. . . and . . . as would not be disregarded (or set aside for future needs) in determining his eligibility . . . ." 42 U.S.C. § 1396a(a)(17) (1988). The concept of availability of resources also underlies corresponding federal regulations: "To determine eligibility on the basis of resources for medically needy individuals, the agency must . . . consider only the individual's resources and those . . . considered available to him under the financial responsibility requirements for relatives[; and c]onsider only resources available during the period for which income is computed . . . ." 42 C.F.R. § 435.845(a) and (b) (1990). Analogous federal regulations require state plans for family assistance to "[s]pecify the amount and types of real and personal property, including liquid assets, that may be 'reserved,' i.e., retained to meet the current and future needs while assistance is received on a continuing basis." 45 C.F.R. § 233.20(a)(3)(i)(A) (1990). In addition, according to federal family assistance regulations,

> in AFDC — The amount of real and personal property that can be reserved for each assistance unit shall not be in excess of one thousand dollars equity value (or such lesser amount as the State specifies in its State plan) excluding only:
>
> (1) The home which is the usual residence of the assistance unit;
>
> . . . .
>
> (5) Real property for a period of six months (or at the option of the State, nine months) which the family is making a good faith effort (as defined in the State plan) to sell subject to following provisions. The family must sign an agreement to dispose of the property and to repay the amount of aid received during such period that would not have been paid had the property been sold at the beginning of such period, but not to exceed the amount of the net proceeds of the sale. If the property has not been sold within the specified time period, or if eligibility stops for any other reason, the entire amount of aid paid during such period will be treated as an overpayment . . . .

45 C.F.R. § 233.20(a)(3)(i)(B)(1) and (5) (1990).

Respondents' interpretative regulations for medical assistance are codified as Subchapters 50A ("General Program Administration") and 50B ("Eligibility Determinations") of the North Carolina

CORRELL v. DIVISION OF SOCIAL SERVICES

[103 N.C. App. 562 (1991)]

Administrative Code. As is required by federal law and regulation, only resources actually available to an applicant are included in "reserve." Thus reserve is defined in respondents' regulations as "assets owned by members of the budget unit and which have a market value." N.C. Admin. Code tit. 10 r. 50A.0201(57) (Sept. 1990). Following federal regulations, respondents deem a resource available when it is actually available and when a "budget unit member has a legal interest in the resource and he, or someone acting in his behalf, can take any necessary action to make it available." N.C. Admin. Code tit. 10, r. 50B.0311(1) (Sept. 1990); r. 50B.0403(a) (Jan. 1991). All available resources are to be included in reserve unless subject to a specific exclusion. The upper limit on the value of reserve for an AFDC-related medically needy budget unit consisting of three persons, as does petitioners' family, is $2,350.00. N.C. Admin. Code tit. 10, r. 50B.0311(2)(b) (Sept. 1990). The homesite is excluded from countable resources when it is the principal place of residence for the applicant. The homesite is defined as the house and lot, plus all buildings on the lot, in a city, or the house and site up to one acre, plus all buildings on the acre, in a rural area. N.C. Admin. Code tit. 10, r. 50B.0403(f) (Jan. 1991).

Respondents' Family and Children Medicaid Eligibility Manual interpreting the regulations states that (i) to be excluded from reserve, the principal residence must be owned and (ii) other excluded property must be contiguous to owned property. Family and Children Medicaid Eligibility Manual MA §§ 3240 III.B.1. at 6R-7R (rev. 10-01-90) (formerly MA § 2375 III.B.1.); 3455 III.A.2.b. at 6c (rev. 12-01-90) (formerly MA § 2461 III.A.2.b.).

As noted above, the primary residence of an applicant for Medicaid would by statute be excluded from consideration in determining his eligibility. In addition, real property (i) contiguous with the primary residence and (ii) which has a property tax value under $12,000.00 would also be excluded. Petitioners argue that under the statute as written, an applicant need not own his primary residence in order to take advantage of the exclusion for contiguous property. Petitioners also argue that any of respondents' rules or regulations interpreting the statute to require that an applicant own his principal residence in order to exclude contiguous property must be held invalid. We do not agree.

Respondents' rules and regulations cited herein follow federal edicts which clearly contemplate that reserve consists of real property which an applicant owns. Rental property could not be "available" or "retained" as those terms are used in federal law and regulations. The same concept of ownership also underlies another portion of North Carolina Medical Assistance Program law which restricts the transfer of property owned by an applicant in order to qualify for benefits. *See* N.C.G.S. § 108A-58 (Supp. 1990). *See also Harris v. Lukhard*, 547 F. Supp. 1015, 1017, 1032 (W.D. Va. 1982), *aff'd*, 733 F.2d 1075 (4th Cir. 1984) (individual who owns too much real property cannot qualify for Medicaid benefits; when an individual applies for Medicaid benefits the Commonwealth evaluates the personal and real property owned by the applicant and if these resources exceed a prescribed amount, the applicant is ineligible to receive benefits; by regulation, ownership of a dwelling occupied by the applicant as his home does not affect eligibility).

In construing a statute all words are to be given effect, if possible, and the words are to be given their usual and ordinary meaning unless a contrary intention is apparent from the language in the statute. The wording of N.C.G.S. § 108A-55 is "and in addition there shall be excluded real property contiguous with the person's primary place of residence." Used in their ordinary sense, the words "in addition" are not merely a redundancy, but further define the exclusion. The word "addition" means "something added or joined to increase value." Webster's Third New International Dictionary 24 (1971). Given their position in the sentence the words "in addition" clearly mean in addition to the principal residence. Hence, the property contiguous to the principal residence may be added to the already excluded principal residence. If the principal residence is not excluded, the property contiguous to the principal residence is not excludable as it is not "in addition to." Since property that is not owned cannot be considered as a resource, exclusion of the principal residence from consideration would not be necessary if the principal residence is not owned. Therefore, under the language of N.C.G.S. § 108A-55, property contiguous to the rented primary residence or homesite is not excludable.

Petitioners argue that requiring these applicants to own their residence in order to exclude their contiguous property leads to an absurd result, since applicants with assets much greater than petitioners' may yet qualify for Medicaid benefits. This argument, however, fails to recognize that guidelines designed to protect

CORRELL v. DIVISION OF SOCIAL SERVICES

[103 N.C. App. 562 (1991)]

homesite property effect the policy of not forcing homeowners to give up their homes in order to qualify for Medicaid benefits. Only if the homesite and contiguous property were owned could they constitute "resources to provide necessary medical care." Only if the exclusion of contiguous property is dependent on the exclusion of an owned homesite would the policy of protecting applicants' ownership of their homes be furthered.

The underlying philosophy of the regulations requires an applicant to utilize his assets effectively to provide for his needs. Under respondents' regulations applicable to the present case, "[r]esources counted in the determination of financial eligibility for medically needy AFDC related cases [include] [e]quity in real property not used as the budget unit's homesite or not producing income, if salable." N.C. Admin. Code tit. 10, r. 50B.0311(7)(l) (Feb. 1990). We also note that respondents' regulations have been revised to specify that equity refers to fee simple interest, tenancy by the entireties, salable remainder interest, or value of burial plots. N.C. Admin. Code tit. 10, r. 50B.0311(8)(l) (Sept. 1990). Respondents' guidelines similarly provide that "[i]tems not counted in the [r]eserve" for the medically needy include "all income producing real property." Family and Children Medicaid Eligibility Manual MA § 3455 III.A.2.a. at 6c (rev. 12-01-90) (formerly MA § 2461 III.A.2.a.). Hence the potential exists for petitioners to qualify for Medicaid benefits by showing their property is not salable. These eligibility limitations safeguard the system from abuse by those able to pay and help assure the availability of funds to those who are truly in need.

Petitioners argue that respondents' Medicaid Eligibility Manual was not adopted in accordance with the Administrative Procedures Act and cannot be the basis for denying benefits. As petitioners did not cross-assign error on this issue, they have waived their right to argue it as a basis for supporting the trial court's order. N.C.R. App. P. 10(d) and 28(c). Moreover, our decision is premised on interpretation of the statute as a matter of law, not on application of the provisions in respondents' manual.

Finally we note that the tax record shows the value of the land as $1,430.00 and the value of the improvements as $2,210.00. The evidence also discloses that Mr. Correll's father owns the trailer located on the property. The record does not reflect a finding of fact as to the nature of the improvement, or whether, if it is the trailer, the trailer is an asset available to petitioners.

For the foregoing reasons, we hold the court below erred in concluding that pursuant to N.C.G.S. § 108A-55, petitioners' property was properly excludable from consideration as a resource without regard to whether they owned their principal residence and in reversing respondents' denial of benefits to petitioners.

Reversed.

Judges JOHNSON and EAGLES concur.