JAMES DONOGHUE, Petitioner v. NORTH CAROLINA DEPARTMENT OF CORRECTION, Respondent

No. COA03-1157

(Filed 19 October 2004)

**Public Officers and Employees— demotion of probation and parole officer—allegations of gross inefficiency**

Use of either the de novo review or whole record test reveals that the trial court did not err by failing to find that petitioner probation and parole officer engaged in grossly inefficient job performance by allowing a probationer to travel out of state and by failing to make weekend curfew checks of other probationers, because: (1) the Department of Corrections (DOC) failed to show that petitioner failed to perform his job satisfactorily when the terms of the probationary judgment regarding the probationer's travel were ambiguous, and it would have been the better practice for the sentencing court to state more clearly whether out-of-state travel was prohibited; (2) although the pertinent DOC manual does have language which prohibits out-of-state travel for cases like the probationer's except in emergency situations with specific approval, these guidelines seem to be inconsistent with testimony from judges, prosecutors, and public defenders who indicate that probation officers have discretion in supervising the terms of probation including the decision of whether to allow out-of-state travel; and (3) even though petitioner failed to make

weekend curfew checks of other probationers, petitioner was scheduled to work forty hours per week and usually completed his hours before the weekend began, he attended many evening treatment sessions to monitor probationers' treatment, his supervisor for over ten years was aware that petitioner was not working weekends since petitioner submitted regular employee time reports and the supervisor never suggested this was problematic, and petitioner was carrying a caseload of sixty probationers even though the recommended number of cases was twenty-five when the program was set up.

Appeal by respondent from order entered 24 June 2003 by Judge Nathaniel J. Poovey in Mecklenburg County Superior Court. Heard in the Court of Appeals 20 May 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Neil C. Dalton and Assistant Attorney General Joseph Finarelli, for the North Carolina Department of Correction respondent appellant.*

*Lesesne & Connette, by Edward G. Connette, for petitioner appellee.*

McCULLOUGH, Judge.

Petitioner James L. Donoghue began working at the North Carolina Department of Correction (DOC) on or about 15 July 1983. During the course of his career, Donoghue established a good reputation for his work as a probation and parole officer. He was the first officer in North Carolina to create a specialized caseload of sex offenders. Donoghue was also instrumental in developing a list of "sex offender conditions" of probation, and the legislature adopted a number of his recommendations statewide.

On or about 12 March 2001, Donoghue was assigned to supervise a sex offender, M.V. There was some conflicting evidence regarding whether M.V. was allowed to travel out of state. First, the probationary judgment was ambiguous. The trial judge imposed the "regular conditions of probation" which are codified at N.C. Gen. Stat. § 15A-1343(b) (2003). Under that statute, M.V. had to "[r]emain within the jurisdiction of the court unless granted written permission to leave by the court or his probation officer." N.C. Gen. Stat. § 15A-1343(b)(2). However, in another portion of the judgment, the trial court ordered that M.V. "is not to leave the State of North

Carolina during the term of probation." To complicate matters further, the DOC's policies and procedures manual states that offenders subject to Level I Intermediate Punishment "are not allowed to travel out-of-state except in emergency situations with the specific approval of either the court or the Post-Release Supervision and Parole Commission."

M.V. asked for Donoghue's permission to travel outside of North Carolina for his job as a computer software salesman. After reviewing the judgment, various departmental policies, and the procedures manual, Donoghue authorized the out-of-state travel.

On 18 June 2001, the mother of M.V.'s victim complained because she believed that allowing M.V. to travel out of state was improper. On 20 June 2001, the Assistant Judicial District Manager over Donoghue, Cynthia Mitchell, received a phone call from a DOC senior official requesting an investigation.

Mitchell conducted an investigation which reviewed Donoghue's entire caseload. Based on this investigation, Donoghue was demoted from his PPO III position to a PPO I position. This demotion carried a five percent reduction in salary and was based on "grossly inefficient job performance, to wit: your failure to properly supervise offenders[.]" The demotion focused primarily on Donoghue's supervision of M.V., and to a lesser extent, his failure to conduct weekend supervision of other probationers.

In January of 2002, Donoghue filed a Petition for Contested Case hearing with the Office of Administrative Hearings. The presiding Administrative Law Judge (ALJ) conducted a contested case hearing and determined that the DOC failed to prove by the greater weight of the evidence that Donoghue had been demoted for just cause. The DOC appealed this decision to the State Personnel Commission (SPC). On 16 December 2002, the SPC issued its Decision and Order rejecting the decision of the ALJ and upholding the DOC's demotion of Donoghue. Donoghue filed a Petition for Judicial Review in Mecklenburg County Superior Court. On 24 June 2003, Judge Nathaniel J. Poovey issued an order which determined that Donoghue's actions did not rise to the level of "grossly inefficient job performance." The DOC appeals.

On appeal, the DOC argues that the superior court erred by failing to find that Donoghue engaged in grossly inefficient job performance. We disagree and affirm the decision of the trial court.

## I. Standard of Review

Chapter 150B of the North Carolina General Statutes addresses judicial review of administrative agency decisions. *Henderson v. N.C. Dept. of Human Resources*, 91 N.C. App. 527, 530, 372 S.E.2d 887, 889 (1988). The standard of review that this Court utilizes is mentioned in N.C. Gen. Stat. § 150B-52 (2003). Amended in 2000, the current version of the statute states:

> A party to a review proceeding in a superior court may appeal to the appellate division from the final judgment of the superior court as provided in G.S. 7A-27. The scope of review to be applied by the appellate court under this section is the same as it is for other civil cases. *In cases reviewed under G.S. 150B-51(c), the court's findings of fact shall be upheld if supported by substantial evidence.*

*Id.* (emphasis added).

This case falls under N.C. Gen. Stat. § 150B-51(c) (2003) because that section applies when "the agency does not adopt the administrative law judge's decision[.]" Here, although the ALJ issued a decision favoring the employee, the SPC rejected that decision and sided with the DOC. Normally, we would uphold the decision if the trial court's findings of fact were supported by substantial evidence.

This case, however, is more complicated because the trial court did not utilize the correct standard of review when considering the final agency decision. N.C. Gen. Stat. § 150B-51(c) states that "the [trial] court shall review the official record, de novo, and shall make findings of fact and conclusions of law." Here, the trial court utilized a whole record test instead of conducting *de novo* review when evaluating the Commission's findings. Therefore, the issue is whether, as a result of this error, we should employ *de novo* review instead of the substantial evidence test mentioned in N.C. Gen. Stat. § 150B-51(c).[1]

There is some precedent for using *de novo* review. In *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 677, 443 S.E.2d 114, 118 (1994), this Court noted that "where the initial reviewing court should have conducted *de novo* review, this Court will directly

---

1. We cannot be too critical of the trial court because the legislature added Section 150B-51(c) to the North Carolina Administrative Procedure Act in 2000. *Cape Med. Transp., Inc. v. N.C. Dep't of Health and Human Servs.*, 162 N.C. App. 14, 21, 590 S.E.2d 8, 13 (2004). Additionally, both parties requested review under the whole record test and "failed to call the recent statutory amendment to the attention of the trial judge."

review the State Personnel Commission's decision under a *de novo* review standard." More recently, we articulated this same principle in *Davis v. N.C. Dep't of Crime Control & Pub. Safety*, 151 N.C. App. 513, 565 S.E.2d 716 (2002). There, the trial court applied the whole record test erroneously when reviewing an agency's decision to demote a member of the North Carolina State Highway Patrol. *Id.* at 513-16, 565 S.E.2d at 717-19. On appeal, this Court utilized the *de novo* standard of review. *Id.* at 516, 565 S.E.2d at 719.

We do not need to make a definitive determination regarding which standard of review to employ. Under either standard, *de novo* review or the more deferential framework articulated in N.C. Gen. Stat. § 150B-52, we would affirm the decision of the trial court.

## II. Legal Background

Pursuant to N.C. Gen. Stat. § 126-35(a) (2003), "[n]o career State employee subject to the State Personnel Act shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause." "In contested cases conducted pursuant to Chapter 150B of the General Statutes, the burden of showing that a career State employee subject to the State Personnel Act was discharged, suspended, or demoted for just cause rests with the department or agency employer." N.C. Gen. Stat. § 126-35(d) (2003). The North Carolina Administrative Code permits demotion "for grossly inefficient job performance without any prior disciplinary action." N.C. Admin. Code tit. 25, r. 1J.0612(a)(2) (June 2004). The Code also defines "Gross inefficiency (Grossly Inefficient Job Performance)" as:

A type of unsatisfactory job performance that occurs in instances in which the employee: fails to satisfactorily perform job requirements as specified in the job description, work plan, or as directed by the management of the work unit or agency; and, that failure results in:

(1) the creation of the potential for death or serious bodily injury to an employee(s) or to members of the public or to a person(s) over whom the employee has responsibility[.]

N.C. Admin. Code tit. 25, r. 1J.0614(f) (June 2004). Thus, the DOC must prove that (1) the employee failed to perform his job satisfactorily and (2) that failure resulted in the potential for death or serious bodily injury. *Id.* With these principles in mind, we turn to consider the assignment of error on appeal.

### III.  Grossly Inefficient Job Performance

The DOC first argues that Donoghue engaged in grossly ineffi-cient job performance by allowing a probationer to travel out of state. We disagree.

The DOC has not shown that Donoghue failed to perform his job satisfactorily because the terms of the probationary judgment regarding M.V.'s travel were ambiguous. The trial judge imposed the "regular conditions of probation" which are set forth in N.C. Gen. Stat. § 15A-1343(b) (2003). Under that statute, M.V. had to "[r]emain within the jurisdiction of the court unless granted written permission to leave by the court or his probation officer." N.C. Gen. Stat. § 15A-1343(b)(2). However, in its judgment, the trial court also ordered that M.V. "is not to leave the State of North Carolina during the term of probation."

The DOC asserts that the court's more stringent prohibition against out-of-state travel supercedes the regular condition of proba-tion which authorized out-of-state travel if M.V. received permission from the court or his probation officer. It cites a portion of N.C. Gen. Stat. § 15A-1343(b)(11) which states:

> Regular conditions of probation apply to each defendant placed on supervised probation unless the presiding judge spe-cifically exempts the defendant from one or more of the condi-tions in open court and in the judgment of the court.

Whether the sentencing judge intended to "specifically exempt" defendant from the regular condition of probation that authorized travel is an open question. However, we understand, as the trial court did, why Donoghue would be confused after reading an order which appears to say two entirely different things. It would have been the better practice for the sentencing court to state more clearly whether out-of-state travel was prohibited. Furthermore, we accept Donoghue's explanation that he tried to find consistency in the two statements:

> And, when I read that [the court's statement that M.V. is not to leave North Carolina during the term of his probation], I inter-preted that to mean stay in the state of North Carolina to be supervised, not transfer out of the state of North Carolina to be supervised by another state. That's what I read—took that to mean. I didn't take it to mean he's not allowed to travel out of state because there are other conditions that allowed him to

travel out of state contained in the judgment. So I looked at all these conditions and weighed it, and that's what I came up with.

Since the judgment of the sentencing court was ambiguous, we do not believe that Donoghue engaged in grossly inefficient job performance by permitting out-of-state travel.

We also note that Donoghue was forced to evaluate other conflicting information in deciding whether to authorize out-of-state travel. The DOC's Division of Community Corrections Policies and Procedures Manual ("the Manual") does have language which prohibits out-of-state travel for Level I Intermediate Punishment cases like M.V.'s "except in emergency situations with the specific approval of either the court or the Post-Release Supervision and Parole Commission[.]" However, these guidelines, as written, seem to be inconsistent with testimony from judges, prosecutors, and public defenders who indicate that probation officers have discretion in supervising the terms of probation, including the decision of whether to allow out-of-state travel. The manual also appears to conflict with the portion of the sentencing court's judgment which authorized out-of-state travel with Donoghue's permission.

Based on this information, we cannot conclude that Donoghue failed to perform his job satisfactorily by allowing out-of-state travel.

The DOC also contends that Donoghue's job performance was unsatisfactory because he failed to make weekend curfew checks. We do not agree. Evidence in the record reveals that Donoghue was scheduled to work forty hours per week. Since many probationers participated in evening treatment sessions, Donoghue attended such sessions to monitor probationers' treatment. As a result of working so many evening hours, Donoghue usually completed forty hours before the weekend began. Moreover, Donoghue's supervisor for over ten years was aware that Donoghue was not working weekends because Donoghue submitted regular employee time reports. This is significant because Donoghue's supervisor never suggested that this was problematic when she conducted regular audits of Donoghue's caseload.

There was also evidence that Donoghue was carrying a caseload of 60 probationers, even though the recommended number of cases was 25 when the program was set up. Donoghue simply had too many cases, too much territory to cover, and too many job demands. Under these circumstances, we cannot conclude that Donoghue engaged in grossly inefficient job performance.

As we have stated, the outcome of this case does not hinge upon which standard of review to employ. Our review of the record indicates that the trial court made findings of fact that were supported by competent evidence, and those findings, in turn, supported the conclusions of law. Furthermore, even under the less deferential *de novo* standard of review, the result would be the same. Therefore, the decision of the trial court is

Affirmed.

Judges HUDSON and BRYANT concur.