IN THE MATTER OF: DISMISSAL PROCEEDINGS AGAINST DR. BARNEY K. HUANG, PROFESSOR, NORTH CAROLINA STATE UNIVERSITY

No. 9210SC27

(Filed 6 July 1993)

1. **Administrative Law and Procedure § 67 (NCI4th) — dismissal of professor by university — standard of judicial review — whole record test**

   In an action arising from the dismissal of an NCSU professor, the Court of Appeals considered the whole record to determine whether the superior court judge was correct as a matter of law in holding that a decision by the Faculty Hearings Committee was not supported by the evidence. When an appellate court reviews the decision of a lower court (as opposed to reviewing an administrative agency's decision on direct appeal), the scope of review under Section 150B-52 of the Administrative Procedure Act is the same as it is for other civil cases. The Court of Appeals review of the superior court's determination under N.C.G.S. § 150B-52 is limited to whether the superior court made any errors in law in light of the record as a whole.

   **Am Jur 2d, Administrative Law § 730.**

2. **Administrative Law and Procedure § 69 (NCI4th) — discharge of university professor as unfit — evidence not sufficient to support finding**

   The evidence in the record did not substantiate a finding that a university professor, Dr. Huang, was unfit to continue as a member of the faculty at NCSU where the Faculty Hearings Committee, in supporting their findings, used incidents that either did not involve an assault by Dr. Huang, were

IN RE DISMISSAL OF HUANG

[110 N.C. App. 683 (1993)]

not initiated by Dr. Huang, were not reported, or did not result in a reprimand at the time of the incident.

**Am Jur 2d, Administrative Law §§ 678 et seq.**

3. **Administrative Law and Procedure § 68 (NCI4th)— discharge of university professor—arbitrary and capricious**

A proceeding against a university professor for assaultive behavior from 1973 through 1985 which resulted in his discharge was patently in bad faith, arbitrary and capricious. The length of time between the misconduct complained of and the disciplinary action taken in connection with that misconduct is indicative of the lack of sound judgment used by NCSU and UNC in their attempt to rid themselves of the professor.

**Am Jur 2d, Administrative Law §§ 671-674.**

4. **Constitutional Law § 101 (NCI4th)— discharge of university professor—arbitrary and capricious—substantive due process violated**

The substantive due process rights of an NCSU professor were violated where the findings supporting his termination were arbitrary and capricious.

**Am Jur 2d, Constitutional Law § 816.**

Judge ORR dissenting.

Appeal by respondents from order entered 4 June 1991 by Judge George R. Greene in Wake County Superior Court. Heard in the Court of Appeals 9 December 1992.

Pursuant to North Carolina General Statutes § 7A-27(b) (1989) and § 150B-52 (1991), this case is before the Court on respondents' appeal from a final judgment on judicial review entered by Judge George R. Greene, Superior Court Judge, presiding over 24 August 1990 session of Wake County Superior Court, in which he reversed the final administrative decisions of the Board of Governors of the University of North Carolina (UNC) and North Carolina State University (NCSU) to discharge Dr. Barney K. Huang from his position on the NCSU faculty and ordered respondents to reinstate Dr. Barney K. Huang to his former position with full backpay and benefits.

IN RE DISMISSAL OF HUANG

[110 N.C. App. 683 (1993)]

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Thomas J. Ziko, for respondents-appellants.*

*Berman & Shangler, by Dean Shangler, for petitioner-appellee.*

JOHNSON, Judge.

On 14 July 1988 NCSU Chancellor Bruce R. Poulton, pursuant to § 603 of the *Code* of the Board of Governors, notified Dr. Huang that he intended to discharge Dr. Huang from his position on the NCSU faculty on grounds that Dr. Huang was unfit to continue as a member of the faculty because he had engaged in verbal and physical assaults on several individuals associated with the University, to wit: Dr. Dallas Chen in 1973, Dr. Henry Y. R. Chen in 1980, Dr. Francis Hassler in April 1980, Professor James W. Dickens in 1985 and Mrs. Grace Wang in June of 1988. Following Dr. Huang's request for a hearing, a five member Faculty Hearings Committee (FHC) was selected to hear evidence and make a recommendation on the Chancellor's charges.

The FHC found that Dr. Huang had been guilty of misconduct of such a nature as to render him unfit to be a faculty member at NCSU. On 7 February 1989, Dr. Poulton informed Dr. Huang and the FHC that he had adopted the FHC's findings and had decided to discharge Dr. Huang. The NCSU Board of Trustees and the UNC Board of Governors subsequently affirmed Chancellor Poulton's decision.

Dr. Huang filed a motion for stay in the matter on 2 August 1990. The matter came before Judge George R. Greene in Wake County Superior Court on 5 September 1990. Judge Greene reversed the decision of the Board of Governors of UNC and NCSU. Respondents' filed notice of appeal.

STANDARD OF REVIEW

[1] Chapter 150B of the North Carolina General Statutes governs review of an agency decision. North Carolina General Statutes § 150B-51(b) (1991) states:

Standard of Review.— After making the determination, if any, required by subsection (a), the court reviewing a final decision may affirm the decision of the agency or remand the case for further proceedings. It may also reverse or modify the agency's decision if the substantial rights of the petitioners

may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G. S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

In reviewing an administrative decision to determine whether the decision is supported by substantial evidence, the appellate court must apply the whole record test. *Leiphart v. N. C. School of the Arts*, 80 N.C. App. 339, 342 S.E.2d 914, *cert. denied*, 318 N.C. 507, 349 S.E.2d 862 (1986). "In applying the whole record test, the court must consider all of the evidence, including that which supports the findings and contradictory evidence." *Mt. Olive Home Health Care Agency, Inc. v. N.C. Dept. of Human Resources*, 78 N.C. App. 224, 228, 336 S.E.2d 625, 627 (1985). The reviewing Court is required to examine all of the competent evidence, pleadings, etc., which comprise the "whole record" to determine if there is substantial evidence in the record to support the administrative tribunal's findings and conclusions. *Savings & Loan Assoc. v. Savings & Loan Commn.*, 43 N.C. App. 493, 259 S.E.2d 373 (1979); *Henderson v. N. C. Dept. of Human Resources*, 91 N.C. App. 527, 372 S.E.2d 887 (1988).

When an appellate court reviews the decision of a lower court, however (as opposed to when it reviews an administrative agency's decision on direct appeal), the scope of review to be applied by the appellate court under Section 150B-52 of the Administrative Procedure Act is the same as it is for other civil cases. *See* North Carolina General Statutes § 7A-27(b); N.C.R. App. P. 10(a); *American Nat'l Ins. Co. v. Ingram*, 63 N.C. App. 38, 41, 303 S.E.2d 649, 651, *cert. denied*, 309 N.C. 819, 310 S.E.2d 348 (1983).

The Court of Appeals' review of the superior court's determination under North Carolina General Statutes § 150B-52, is limited to whether the superior court made any errors in law in light of

the record as a whole. *Scroggs v. North Carolina Criminal Justice Standards Comm.*, 101 N.C. App. 699, 400 S.E.2d 742 (1991). To accomplish our task though, we must consider the "whole record" so that we may determine whether the superior court judge was correct as a matter of law in holding that the FHC decision was not substantiated by the evidence.

[2] By respondents' first assignment of error, respondents contend that the trial court erred when it held that the University's decision to discharge Dr. Huang for misconduct rendering him unfit to continue as a member of the faculty was unsupported by substantial evidence in the record. We disagree.

Respondents argue that there were five incidents of misconduct which led to the dismissal of Dr. Huang. The evidence in the record tended to show the following:

### Altercation with Dallas Chen

Dr. Dallas Chen was a former graduate student of Dr. Huang. Dr. Huang was Dr. Chen's Masters thesis advisor. While working under Dr. Huang, Dr. Chen and Dr. Huang had several personal conflicts. As a result of the conflicts, Dr. Chen selected another faculty member to advise him on his Ph.D. research and dissertation.

After attaining his Ph.D., Dr. Chen left NCSU for a brief period of time. When he returned, he became friends with Dr. Huang's new research associate Dr. Chou. During 1973, a dispute arose between Dr. Chou and Dr. Huang over a report Dr. Chou had been writing for Dr. Huang's project. In an attempt to settle the dispute, a meeting was called. Dr. Chen was not invited to the meeting but heard about the meeting from Dr. Chou.

On the night of the meeting, Dr. Chen went to the meeting out of curiosity. Dr. Chen was aware that his presence at the meeting would cause tension. When Dr. Chen entered the meeting, Dr. Huang ordered him to leave. Thereafter, an altercation erupted between Dr. Chen and Dr. Huang.

According to Dr. Dallas Chen, Dr. Huang attacked him when Dr. Chen opened the door to the meeting room. Before Dr. Chen could respond to Dr. Huang's assault, the other people in the meeting intervened and convinced him to leave the building.

IN RE DISMISSAL OF HUANG

[110 N.C. App. 683 (1993)]

According to Dr. Huang's testimony, Dr. Chen was the aggressor in the incident. He testified that he ordered Dr. Chen to leave the meeting, but Dr. Chen insisted that he was not going to leave. Dr. Chen then rushed at him and tried to kick him but was stopped by the other people in the room. Dr. Huang further testified that Dr. Chen never hit him and that he never kicked Dr. Chen.

The record does not contain any evidence which indicates this incident was made the topic of an investigation, departmental discussion or even documented until twelve years later. No formal action was taken on this incident until 1988 when the University sought to dismiss Dr. Huang for misconduct.

### Altercation with Dr. Henry Y. R. Chen

Dr. Henry Y. R. Chen was another former graduate student of Dr. Huang. Dr. Chen initially had some difficulties completing his Ph.D. under Dr. Huang. In fact, Dr. Chen at one time contemplated giving up on completion of his Ph.D. thesis. Once Dr. Henry Bowen learned of this, he talked to Dr. Chen and encouraged him to continue. He was later assigned as co-chairman along with Dr. Huang of Dr. Chen's Ph.D. thesis.

While Dr. Huang was out of the country and without his approval, Dr. Chen completed and defended his dissertation before the Ph.D. review committee. Upon completion of Dr. Chen's dissertation, all of the faculty members approved Dr. Chen's dissertation save Dr. Huang who was still out of the country. When Dr. Huang returned from his sabbatical in April 1980, he was given a copy of Dr. Chen's dissertation. He did not approve the dissertation nor did he return the dissertation to Dr. Chen for correction.

Dr. Chen, along with his wife and child, went to Dr. Huang's office to speak to him about the dissertation. Dr. Chen asked Dr. Huang for his copy of the dissertation which Dr. Huang refused to return to him. When Dr. Chen insisted a second time that Dr. Huang return his dissertation, an altercation ensued.

Dr. Chen testified that Dr. Huang pushed him outside the office and he became upset because his wife and child were left alone in Dr. Huang's office. In an attempt to protect his wife and child, he kicked Dr. Huang.

## IN RE DISMISSAL OF HUANG

[110 N.C. App. 683 (1993)]

Dr. Huang testified that he did have an argument with Dr. Chen about his dissertation but denied shoving Dr. Chen out of his office. He also testified that when he tried to close the door to his office, Dr. Chen kicked him on the legs. Dr. Huang denied the presence of Dr. Chen's wife and child in his office. According to Dr. Huang, no blows were exchanged during the altercation.

In a memorandum dated 26 May 1980, a committee consisting of Dr. Dickens, Dr. Humphries, Dr. Wiser and Dr. Humenik investigated the matter and determined that "both parties bear responsibility for inappropriate and regrettable personal and professional actions." No other action was taken in reprimand for Dr. Huang's actions.

### Altercation with Professor Hassler

Dr. Hassler was the head of the Biological and Agricultural Engineering (BAE) Department and Dr. Huang's supervisor. Prior to leaving on a sabbatical, Dr. Huang submitted two technical papers in lieu of a final report due on a project supported by the North Carolina Energy Institute (NCEI). During Dr. Huang's absence, the NCEI refused to accept the papers submitted by Dr. Huang and refused to pay NCSU the full contract price.

Upon Dr. Huang's return in April 1980, Dr. Hassler called him into his office and discussed NCEI's refusal to accept the papers Dr. Huang had submitted. Dr. Hassler also told Dr. Huang that BAE would not endorse the papers and that he would have to make corrections before they could be resubmitted to NCEI.

According to Dr. Huang, Dr. Hassler then began to accuse him of submitting false vouchers for reimbursements for travel expenses. Dr. Huang denied the charges.

Ms. Lib Nordan, Dr. Hassler's administrative secretary, testified that she heard Dr. Huang shout obscenities at Dr. Hassler and saw him assault Dr. Hassler. When Ms. Nordan heard the argument, she testified that she went into the office to try and stop it. Upon entering the office, she saw Dr. Huang standing directly over Dr. Hassler who was seated in a chair. Ms. Nordan then intervened and told Dr. Huang to stop at which time he moved away from Dr. Hassler's chair and Dr. Hassler was able to stand up. She further testified that Dr. Huang tried to get Dr. Hassler to go to the Provost's Office but Dr. Hassler refused to go. Dr. Huang placed a few calls and left the office shouting obscenities.

It is important to note that Dr. Hassler did not lodge a complaint about the incident that transpired. It was not until 1985 when the "Huang matter" was compiled that an investigation of the Hassler incident was initiated.

### Altercation with Professor Dickens

Professor James William Dickens was a colleague of Dr. Huang's in the BAE Department. During January of 1985, Professor Dickens along with Dr. Bowen served on the committee responsible for assigning lab space in the North Laboratory Section of Weaver Laboratories. In December of 1984 or January of 1985, some lab space that Dr. Huang was using to store junk was assigned to another professor, Dr. Mohapatra. Dr. Mohapatra needed the space to conduct a study which involved tissue cultures.

Professor Dickens typed a memorandum to Dr. Huang which informed him of the temporary assignment and asked him to remove the supplies and equipment he had stored in the area. Professor Dickens hand delivered the memorandum to Dr. Huang, which was improper procedure, and told him about the reassignment of lab space. Dr. Huang protested the assignment and claimed that the space was University space over which Professor Dickens had no control. Professor Dickens explained that he had been given authority to assign the space by the University.

According to Professor Dickens, Dr. Huang became mad and agitated. He shoved Professor Dickens up against the open door of Dr. Huang's office and told Professor Dickens to get out of his office. Professor Dickens alleged that Dr. Huang continued to kick and shove him. Professor Dickens purportedly called to another BAE colleague who was standing in the hallway for assistance.

Dr. Suggs testified that as he walked down the hall he saw Professor Dickens being kicked on the shins by Dr. Huang. He also saw Professor Dickens push Dr. Huang.

Dr. Huang testified that he did not assault Professor Dickens; that during the incident with Professor Dickens, he asked Professor Dickens to leave his office; that after he made the request and without provocation, Professor Dickens turned around and struck him in the chest and nearly knocked him down; that Professor Dickens then called for Dr. Suggs to come as a witness while Professor Dickens tried to strike him again; that Dr. Huang caught the blow and they began kicking at each other; and that after

they kicked each other a few times, Professor Dickens left the office with Dr. Suggs.

When the BAE Department learned of the Dickens incident, an investigation ensued but the investigation was not limited in scope to the Dickens incident. Instead, the entire "Huang matter" was made the subject of a report. This report documented all incidents or altercations which had involved Dr. Huang. The report went back twelve years to discuss the Dallas Chen incident that occurred in 1973, and both the Henry Chen and Dr. Hassler incidents that occurred in 1980. After this investigation had been completed, no action was taken against Dr. Huang until three years later.

### Altercation with Grace Wang

From the record, we find that at the time the incident occurred between Grace Wang and Dr. Huang, June 1988, she was not associated with the University in any capacity. As such, we find this incident should not have been a consideration in the dismissal of Dr. Huang based on misconduct in his capacity as a faculty member of the University.

The FHC in supporting their findings to dismiss Dr. Huang used incidents that either: (1) did not involve an assault by Dr. Huang; (2) were not initiated by Dr. Huang; (3) were not reported; or (4) no reprimand was made at the time of the incident. We find the evidence contained in the record did not substantiate a finding that Dr. Huang was unfit to continue as a member of the faculty at NCSU.

[3] By respondents' second assignment of error, respondents contend that the trial court erred when it held that the University acted arbitrarily or capriciously when it decided to discharge Dr. Huang. We disagree.

When an aggrieved person contends that an administrative decision is arbitrary and capricious, the court, pursuant to North Carolina General Statutes § 150B-51(6), must apply the "whole record" test. *Rector v. N.C. Sheriff's Educ. and Training Standards Comm.*, 103 N.C. App. 527, 406 S.E.2d 613 (1991).

In reviewing the record, we find the evidence in the case *sub judice* showed the following: that NCSU did not proceed against Dr. Huang in regard to the 1973 Dallas Chen incident and 1980

Hassler and Henry Chen incidents until 1988; that in January 1985, NCSU Chancellor Bruce Poulton requested an investigation of the "Huang matter" after an altercation between Dr. Dickens and Dr. Huang; that this investigation apprised Chancellor Poulton of the Dallas Chen, Henry Chen and Dr. Hassler incidents; that even after the report was compiled, Chancellor Poulton did not initiate any discharge proceeding based upon assaultive conduct until three and one-half years later; that Chancellor Poulton attempted to have Dr. Huang transferred after the Huang matter was investigated, but Dr. Huang resisted and filed a grievance with the Faculty Mediation Committee (FMC); that the FMC found that Dr. Huang's transfer was· in the best interest of both Dr. Huang and BAE, and that Dr. Huang was praised as an innovative researcher and a proven effective teacher with great potential to contribute to NCSU; that FMC's report mentioned nothing about Dr. Huang's assaultive misconduct; that Dr. Huang was subsequently transferred to another department, but his performance in that department was found inadequate; that on 7 April 1988, Dr. Huang was notified that dismissal proceedings had been initiated against him for neglect of duty; that Dr. Huang requested a dismissal hearing in regard to this neglect of duty charge but NCSU never proceeded with the matter; and that on 14 July 1988, Dr. Huang was informed of Chancellor Poulton's intent to dismiss Dr. Huang on the grounds of misconduct involving the incidents that took place in 1973, 1980, and 1985.

From the evidence, we find that Dr. Huang's dismissal for misconduct was arbitrary in the sense that the University failed to indicate sound reasoning in their decision to dismiss Dr. Huang. The FHC cited the Dallas Chen incident in 1973, the Dr. Hassler incident in 1980, the Henry Chen incident in 1980 and the Dickens incident in 1985, as the reason Dr. Huang was dismissed for misconduct. However, the record indicates that in 1986 all of the incidents were thoroughly investigated by the FMC and no proceeding to dismiss Dr. Huang for misconduct was initiated. Instead, the FMC transferred Dr. Huang to another department. On 7 April 1988, Dr. Huang was informed that NCSU intended to discharge him for neglect of duty. Subsequently, the dismissal proceeding for neglect of duty was dropped without explanation. Then, in July of 1988, Chancellor Poulton informed Dr. Huang that he was being dismissed because of misconduct.

**IN RE DISMISSAL OF HUANG**

[110 N.C. App. 683 (1993)]

The length of time between the misconduct complained of and the disciplinary action taken in connection with that misconduct, respectively fifteen, eight and three years later, is indicative of the lack of sound judgment used by NCSU and UNC in their attempt to rid themselves of Dr. Huang. Accordingly, we find NCSU's and UNC's proceeding against Dr. Huang for assaultive behavior from 1973 through 1985 was patently in bad faith, arbitrary and capricious. "Administrative agency decisions may be reversed as arbitrary or capricious if they are 'patently in bad faith,' or 'whimsical' in the sense that 'they indicate a lack of fair and careful consideration' or 'failed to indicate' any 'courses of reasoning and exercise of judgment.'" *Id.* at 532, 406 S.E.2d at 617.

[4] By respondents' last assignment of error, respondents contend that the trial court erred when it found that the respondents had violated Dr. Huang's due process rights. We disagree.

> The assertion of a violation of substantive due process rests on the alleged want of a rational basis for the conclusions reached by the committee and the Board of visitors. It is conceded that the scope of judicial review in this instance extends only to determining whether there is substantial evidence to sustain those administrative conclusions.

*Kowtoniuk v. Quarles*, 528 F.2d 1161, 1165 (4th Cir. 1975).

As we have already made a determination that the board's findings were not supported by the evidence and were arbitrary and capricious, we find the substantive due process rights of Dr. Huang were violated. Accordingly, the trial court properly concluded that the respondents violated Dr. Huang's substantive due process rights.

The decision of the trial court is affirmed.

Chief Judge ARNOLD concurs.

Judge ORR dissents by separate opinion.

Judge ORR dissenting.

I respectfully dissent based upon our limited scope of review in this action which is governed by Chapter 150B of the North Carolina General Statutes.

Under N.C. Gen. Stat. § 150B-51(b), a court may "reverse or modify [an] agency's decision if the substantial rights of the petitioners may have been prejudiced." Only two bases for finding petitioner's rights were prejudiced by the University's decision could apply to the case *sub judice*: (1) that the University's decision was unsupported by substantial evidence in view of the entire record as submitted, or (2) that the University's decision was arbitrary or capricious.

As recognized by the majority, "[a] review of whether the agency decision is supported by the evidence, or is arbitrary or capricious, requires the court to employ the whole record test." *Walker v. North Carolina Dep't of Human Resources*, 100 N.C. App. 498, 502, 397 S.E.2d 350, 354 (1990), *disc. review denied, writ of supersedeas denied*, 328 N.C. 98, 402 S.E.2d 430 (1991). "The 'whole record' test does not[, however,] allow the reviewing court to replace the [agency's] judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*, . . . ." *Thompson v. Wake County Bd. of Educ.*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977) (citation omitted). "We merely 'determine whether an administrative decision has a rational basis in the evidence.' " *North Carolina Dep't of Correction v. Hodge*, 99 N.C. App. 602, 610, 394 S.E.2d 285, 289 (1990) (citation omitted).

Further, as this Court stated in *Lewis v. North Carolina Dep't of Human Resources*, 92 N.C. App. 737, 740, 375 S.E.2d 712, 714 (1989):

> The "arbitrary or capricious" standard is a difficult one to meet. Administrative agency decisions may be reversed as arbitrary or capricious if they are "patently in bad faith," . . . or "whimsical" in the sense that "they indicate a lack of fair and careful consideration" or "fail to indicate 'any course of reasoning and the exercise of judgment'. . . ."

In my opinion, the evidence before us does not indicate a "lack of fair and careful consideration" or "bad faith" on the part of the University. In addition, I believe a careful review of the record shows that the University's decision is supported by substantial evidence. It is not the duty of this Court to reverse the University's decision and replace its judgment, even though the University could justifiably have reached a different result. This matter is not before us *de novo*, and we are bound by our limited scope of review.

In addition, I do not agree with the majority in its decision that the University should not have considered the incident which occurred between Dr. Huang and Grace Wang in its decision to dismiss Dr. Huang. Under Chapter 126 of the North Carolina General Statutes, "[a] permanent State employee may be dismissed for (1) inadequate performance of duties or, (2) personal conduct detrimental to State service." *Leiphart v. North Carolina School of the Arts*, 80 N.C. App. 339, 343, 342 S.E.2d 914, 918, *cert. denied*, 318 N.C. 507, 349 S.E.2d 862 (1986).

In the "incident" between Dr. Huang and Grace Wang, Dr. Huang was accused of assaulting Grace Wang. I believe that the acts Dr. Huang was accused of in this assault would constitute personal conduct that could be detrimental to his service as a faculty member of the University. Accordingly, I do not agree with the majority's holding that the University should not have considered this assault as evidence in support of Dr. Huang's dismissal and would reverse the trial court's decision and affirm the University's action.